FILED

2015 Apr-30  PM 04:22
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## (SOUTHERN DIVISION)

| | |
|---|---|
| SHARON DOWNING,<br><br>    Plaintiff,<br><br>v.<br><br>MIDLAND FUNDING, LLC, a foreign limited liability company; TD BANK USA, a National Association; EQUIFAX INFORMATION SERVICES, LLC, a foreign limited liability company; EXPERIAN INFORMATION SOLUTIONS, INC., a foreign corporation; AND TRANS UNION, LLC, a foreign limited liability company,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  CV:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, and for Plaintiff's Complaint against the Defendants states as follows:

### PARTIES, JURISDICTION, & VENUE

1.    Plaintiff SHARON DOWNING (hereinafter "Plaintiff" or "Downing") is a natural person who is a resident of Alabama and is over the age of nineteen (19).

2.    Defendant MIDLAND FUNDING, LLC (hereinafter "Defendant" or "Midland") is a foreign limited liability company that engages in the business of

suing consumers and/or reporting consumer credit information to credit reporting agencies. It conducts business in this Judicial District. Its principal place of business is the State of California and it is incorporated in Delaware.

3.   TD Bank USA, NA (hereinafter "Defendant" or "TD Bank") is a national association with a principal address in Portland, Maine. TD Bank does business in Alabama. TD Bank is the issuer of credit cards for the retailer Target Corporation.

4.   Defendant Equifax Information Services, LLC, (hereinafter "Defendant" or "Equifax") is a foreign company that engages in the business of maintaining and reporting consumer credit information and does business in this Judicial District. Its principal place of business is the State of Georgia and it is incorporated in Georgia.

5.   Defendant Experian Information Solutions, Inc., (hereinafter "Defendant" or "Experian") is a foreign company that engages in the business of maintaining and reporting consumer credit information and does business in this Judicial District. Its principal place of business is the State of California and it is incorporated in Ohio.

6.   Defendant Trans Union, LLC, (hereinafter "Defendant" or "Trans Union") is a foreign company that engages in the business of maintaining and reporting consumer credit information and does business in this Judicial District. Its

2

principal place of business is the State of Illinois and it is incorporated in Delaware.

7.   Personal jurisdiction exists over Defendants as they had the necessary minimum contacts with the State of Alabama and this suit arises out of their specific conduct with Plaintiff in Alabama. All the actions described in this suit occurred in Alabama.

8.   Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332) as the amount claimed exceeds $75,000.00 between these diverse parties.

**9.**   Venue is proper as Plaintiff lives in Alabama and the Defendants do business in this judicial district.

## FACTUAL ALLEGATIONS

10.   This action arises out of Defendants' violations of the Fair Credit Reporting Act[1] (15 U.S.C. § 1681 et seq. [hereinafter "FCRA"]), out of state law violations and out of the invasion of Plaintiff's personal and financial privacy by the Defendants.

11.   The Plaintiff opened an account with Target through TD Bank. Plaintiff allegedly had a debt that she owed to TD Bank.

12.   Midland Funding, LLC (hereinafter "Midland") purchased the alleged debt from TD Bank.

---

[1] Any reference the FCRA or any part thereof encompasses all relevant parts and subparts thereto.

13.   On or about September 23, 2013, Defendant Midland Funding, LLC
      (hereinafter "Midland") sued Plaintiff in the District Court of Talladega
      County, Alabama (DV-2013-900115) for a debt it claimed Downing owed it.

14.   Defendant Midland never had any intention of offering any proof at trial.

15.   Defendant Midland offered no proof at trial.

16.   Even when the court asked if the Defendant Midland was prepared to offer
      evidence, it indicated, through counsel, that it was not.

17.   The Defendant Midland did not have a representative available to testify.

18.   Instead, the lawsuit against Plaintiff was filed by Defendant Midland with the
      hope of obtaining a default judgment or coercing Plaintiff into paying on a debt
      Midland refused to prove.

19.   This is the pattern of collection activity by Defendant Midland in its collection
      lawsuits in Alabama.

20.   The Midland suit was filed by the Holloway and Moxley collection law firm.

21.   Plaintiff hired an attorney who filed an appearance on or about May 22, 2014.

22.   The state court set the case for trial. After several continuances, Notice was
      sent to Defendant Midland and Plaintiff setting the trial for October 1, 2014.

23.   Plaintiff was prepared for trial on October 1, 2014.

24.   Despite having over a year to prepare its case, Defendant Midland failed to
      prove its case and was not prepared to prove its case.

25. The underlying case resulted in a judgment in favor of Plaintiff Downing, defendant in underlying case, on October 2, 2014.

26. The Order stated "After being called for trial on the 1st day of October, 2014 and upon the stipulation of facts, the Court finds in favor of the Defendant. Costs taxed as paid."

27. The state court ruling was a final judgment.

28. This final judgment was not appealed.

29. There is no avenue for appeal for Defendant Midland of this judgment as the time to appeal has passed.

30. Defendant Midland knew it had lost the case.

31. Defendant Midland knows losing the case means Plaintiff does not owe the debt to Defendant Midland.

32. Defendant Midland reported, and has continued to report (even after losing the case), to the credit reporting agencies that Plaintiff owed this money and was in default.

33. Plaintiff does not owe this money to Defendant Midland or anyone else.

34. All Defendants refused to remove the false and derogatory tradelines from Plaintiff's credit reports as the credit reporting agencies refused to follow the court Order but instead only care about their paying customers Midland and TD Bank which still wants to be paid even though it lost the collection lawsuit.

35.    After Plaintiff won the case, she called and sent one or more letters to
Defendants Equifax, Experian, and Trans Union requesting an investigation of
the Defendant Midland's and TD Bank's account that still appeared on
Plaintiff's credit reports.

36.    Plaintiff requested that the Defendant Midland's account be updated to
accurately reflect the information.

37.    Plaintiff also requested that the Defendant TD Bank's account be updated to
accurately reflect the information

38.    Defendants Midland, TD Bank, Equifax, Experian, and Trans Union were not
concerned and did not care about what the state court did in the case as
Defendants Midland, TD Bank, Equifax, Experian, and Trans Union did not
intend to perform a reasonable investigation.

39.    Defendants Midland, TD Bank, Equifax, Experian, and Trans Union did not
perform any type of reasonable investigation.

40.    Defendants Equifax, Experian, and Trans Union notified Defendant Midland
and/or Defendant TD Bank in accordance with the FCRA of the dispute by
Plaintiff Downing.

41.    Alternatively, Defendants Equifax, Experian, and Trans Union did not properly
notify Defendant Midland and/or Defendant TD Bank and, as part of this
failure, did not include all relevant information provided by Plaintiff in its
notification of Defendant Midland.

6

42. Defendants failed to properly investigate this dispute as if Defendants had properly investigated, the accounts would have been updated or deleted.

43. All Defendants were provided with more than sufficient information in the dispute and in their own internal sources of information (which includes the knowledge of Defendant Midland through its state court trial counsel that the case was a defeat for Defendant Midland) to conduct an investigation and to conclude that the account complained of was being reported incorrectly.

44. Defendants Equifax, Experian, and Trans Union have previously proclaimed that they are obligated to rely upon whatever the public records state about a consumer.

45. Despite this knowledge, Defendants Equifax, Experian, and Trans Union have completely abdicated their obligations under federal and state law and have instead chosen to merely "parrot" whatever their customer, Defendant Midland or TD Bank, has told them to say.

46. Defendants Equifax, Experian, and Trans Union have a policy to favor the paying customer, in this situation Defendant Midland and TD Bank, rather than what the consumer or the state court says about a debt.

47. The importance of keeping balances on credit reports is that all the Defendants understand that one of the most powerful methods furnishers such as Defendant Midland and TD Bank have to wrench payments from a consumer is by placing accounts with balances on the consumer's credit reports.

48.     Defendants have a policy and procedure to refuse to properly update credit reports of consumers, like Plaintiff, who do not owe the alleged debt. That reason is to keep false information on the credit report. The false information consists of a balance shown as owed or charged off when Defendants know no money is owed.

49.     Defendants Midland and TD Bank have promised through their subscriber agreements or contracts with the credit reporting agencies to accurately update accounts but Defendants have willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow this requirement as well as the requirements set forth under the FCRA and state law, which has resulted in the intended consequences of this information remaining on Plaintiff Downing' credit reports.

50.     Defendant Midland assumed a duty, through the subscriber agreement and other actions, to accurately report the balances and this duty was breached in a negligent, wanton, reckless, willful, intentional, and/or malicious manner.

51.     Defendants have a policy to "park" false information on at least one of the consumer's credit reports. This is a term in the industry for keeping a false balance (or false account) on the credit report so that the consumer will be forced to pay off the balance in order to obtain a refinancing or to qualify for a loan or to increase the consumer's credit score from the artificially lowered

8

score which directly resulted from the Defendants' intentional and malicious conduct.

52.  In parking or allowing the parking of an account, all Defendants know they are violating their obligations and duties under federal and state law to accurately report the account and the balance.

53.  All Defendants know that parking a balance will lead to false and defamatory information being published every time the Plaintiff's credit report is accessed and this is the malicious and intentional design behind Defendants' actions with the goal to force Plaintiff to pay on an account Plaintiff does not owe.

54.  All Defendants maliciously, willfully, intentionally, recklessly, and/or negligently failed to review the information provided in the disputes and that was already in their files and to conduct a reasonable investigation on Plaintiff's disputes, which led as a direct result and consequence to all of the Defendants either failing to delete information found to be inaccurate, failing to replace the inaccurate information with accurate information, and/or reinserting the information without following the dictates of the FCRA.

55.  At all relevant times the Defendants Equifax, Experian, and Trans Union failed to maintain and failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports, concerning the account in question, violating 15 U.S.C. § 1681e(b) and state law.

56. Defendant Midland and TD Bank failed to properly maintain and failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information and Plaintiff's credit report, concerning the account in question, thus violating state law as set forth in this Complaint. These violations occurred before, during, and after the dispute process began with the consumer reporting agencies.

57. Defendant Midland and TD Bank have taken illegal aggressive actions in a continued effort to collect the alleged debt against Plaintiff. This includes the continued reporting of the debt to third parties (even after losing the state court trial), including consumer reporting agencies such as Defendants Equifax, Experian, and Trans Union, and stating that Plaintiff owes the debt.

58. Defendants Equifax, Experian, and Trans Union have failed to maintain Plaintiff's account with maximum accuracy and all Defendants have failed to properly investigate the account in response to the disputes made by Plaintiff.

59. The conduct of the Defendants has proximately cause Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

60. The practice of the Defendants is to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FCRA and state law.

61. All Defendants are sophisticated businesses and they know their conduct is wrong.

62. For example, Defendants have been sued for this identical misconduct in Alabama.

63. All actions taken by the Defendants were done with malice, were done willfully, and were done with either the desire to harm Plaintiff Downing and/or with the knowledge that their actions would very likely harm Plaintiff Downing and/or that their actions were taken in violation of the FCRA and/or state law and/or that they knew or should have known that their actions were in reckless disregard of the FCRA and/or state law.

64. All Defendants have engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and consumer reports and as such all Defendants are subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by these Defendants and similar companies.

65. Defendants are liable to Plaintiff Downing through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by its employees and agents.

66. Plaintiff has suffered actual damages as a result of these illegal actions by Defendants in the form of anger, anxiety, emotional distress, fear, frustration,

11

upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

## COUNT ONE
## (FCRA)

67.  Plaintiff adopts and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

68.  Defendants Equifax, Experian and Trans Union are "consumer reporting agencies," as codified at 15 U.S.C. § 1681a(e).

69.  Defendants Midland and TD Bank are entities who, regularly and in the course of business, furnish information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher," as codified at 15 U.S.C. § 1681s-2.

70.  Plaintiff notified Defendants Equifax, Experian and Trans Union directly of a dispute on the Defendant Midland account's completeness and/or accuracy, as reported.

71.  Defendants Equifax, Experian and Trans Union properly notified Defendants Midland and/or TD Bank of Plaintiff's dispute in accordance with the FCRA requirements.

72.  Alternatively, Defendants Equifax, Experian and Trans Union failed to notify Defendants Midland and/or TD Bank of Plaintiff's dispute in accordance with the FCRA requirements.

12

73.  Defendants failed to delete information found to be inaccurate, reinserted the information without following the FCRA, or failed to properly investigate Plaintiff's disputes.

74.  Plaintiff alleges that at all relevant times Defendants Equifax, Experian and Trans Union failed to maintain and failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff Downing' credit reports, concerning the account in question, violating 15 U.S.C. § 1681e(b).

75.  Plaintiff alleges that all Defendants failed to conduct a proper and lawful reinvestigation.

76.  All actions taken by the Defendants were done with malice, were done willfully, and were done with either the desire to harm Plaintiff Downing and/or with the knowledge that their actions would very likely harm Plaintiff Downing and/or that their actions were taken in violation of the FCRA and state law and/or that knew or should have known that their actions were in reckless disregard of the FCRA and state law.

77.  All of the violations of the FCRA proximately caused the injuries and damages set forth in this Complaint.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against Defendants for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims more than

$75,000.00), costs, expenses, fees, including attorney's fees, injunctive relief to prevent

further violations, and for such other and further relief as may be just and proper.

## COUNT TWO
## (INVASION OF PRIVACY)

78.  Plaintiff adopts and incorporates by reference all of the paragraphs of this

Complaint as though fully stated herein.

79.  Alabama law recognizes Plaintiff's right to be free from invasions of privacy

and Defendants violated Alabama state law as described in this Complaint.

80.  Congress explicitly recognized a consumer's inherent right to privacy in

collection matters in passing the Fair Debt Collection Practices Act, when it

stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of
> personal bankruptcies, to marital instability, to the loss of jobs,
> and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

81.  Congress further recognized a consumer's right to privacy in financial data in

passing the Gramm Leech Bliley Act, which regulates the privacy of consumer

financial data for a broad range of "financial institutions" including debt

collectors (albeit without a private right of action), when it stated as part of its

purposes:

> It is the policy of the Congress that **each financial institution
> has an affirmative and continuing obligation to respect the
> privacy of its customers** and to protect the security and

14

confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

82.    Defendants intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff.

83.    Defendants intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting or credit reporting this debt thereby invading and intruding upon Plaintiff's right to privacy.

84.    Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

85.    The conduct of Defendants, in engaging in the above-described illegal conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

86.    As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendants.

87.    All acts of Defendants were committed with malice, intent, wantonness, and/or recklessness and as such Defendants are subject to punitive damages.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against Defendants for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims more than $75,000.00), costs, expenses, fees, including attorney's fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

## COUNT THREE
### (NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT EMPLOYEES OR AGENTS)

88.   Plaintiff adopts and incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

89.   Defendants' agents or employees are allowed and encouraged to break the law.

90.   Defendants are aware of the wrongful conduct of its employees or agents.

91.   Defendants negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent employees or agents, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendants are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against Defendants for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims more than

$75,000.00), costs, expenses, fees, including attorney's fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

## COUNT FOUR
## (NEGLIGENCE/WANTONNESS)

92.  Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

93.  Defendants negligently and/or wantonly injured the Plaintiff.

94.  Defendants assumed a duty, through the subscriber agreement and other actions, to accurately report the balances and account.

95.  Defendants violated all of the duties the Defendants had and such violations were made intentionally, willfully, recklessly, maliciously, wantonly, and negligently.

96.  It was foreseeable, and Defendants did in fact foresee it, that refusing to properly update and investigate would cause the exact type of harm suffered by the Plaintiff.

97.  Defendants acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff Rogers as set forth in this Complaint.  This includes the initial reporting of Defendant Discover account; the handling of any investigations on the accounts; and all other aspects as set forth in this Complaint, including the collection suit by Defendant Discover.

17

98.  Defendants intentionally published false and defamatory information related to the Defendant Midland account.

99.  Defendants acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff Downing as set forth in this Complaint. This includes the initial reporting of Defendant Midland account; the handling of any investigations on the accounts; and all other aspects as set forth in this Complaint, including the collection suit by Defendant Midland.

100. Defendants assumed a duty, through the subscriber agreement and other actions, to accurately report the balances and account.

101. Defendants violated all of the duties the Defendants had and such violations were made intentionally, willfully, recklessly, maliciously, wantonly, and negligently.

102. It was foreseeable, and Defendants did in fact foresee it, that refusing to properly update and investigate would cause the exact type of harm suffered by the Plaintiff Downing.

103. Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this complaint and such conduct occurred before, during and after the disputes to Defendants Equifax, Experian and Trans Union.

18

104. As a result of this conduct, action, and inaction of all Defendants, Plaintiff Downing has suffered damages as set forth in this Complaint.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against Defendants for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims more than $75,000.00), costs, expenses, fees, including attorney's fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

## COUNT FIVE
## (MALICIOUS PROSECUTION AND ABUSE OF PROCESS - DEFENDANT MIDLAND)

105. Plaintiff adopts and incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

106. Defendant Midland instituted and continued prosecuting the lawsuit against Plaintiff with no reasonable basis to do so.

107. Defendant Midland filed the lawsuit with no intention of ever proving its case.

108. Defendant Midland continued to prosecute the case with no intention of ever proving its case.

109. Defendant Midland filed and used this case as a means of attempting to extort money out of Plaintiff or obtaining a default judgment against Plaintiff if Plaintiff did not answer the suit.

110.    Defendant Midland instituted and continued prosecuting the lawsuit against Plaintiff with malice and with the design and plan that the lawsuit would result in an illegal judgment against the Plaintiff or would cause Plaintiff to pay Defendant Midland money on a non-existent debt.

111.    The malicious plan of Defendant Midland included the knowledge that the fraudulent judgment would be devastating to Plaintiff's credit report and credit scores and would lead to garnishments and the Defendant Midland tried to accomplish this by the Defendant Midland's malicious and abusive actions.

112.    Throughout the entire illegal lawsuit against Plaintiff, Defendant Midland knew at all times that there was no basis for the lawsuit and the intent and design of filing the lawsuit and continuing to prosecute the lawsuit was to extort money from the Plaintiff which Defendant Midland knew it was not entitled to receive.

113.    The litigation against Plaintiff filed by Defendant Midland eventually resulted in adjudication in favor of Plaintiff.

114.    The illegal and improper actions of the Defendant Midland constitute malicious prosecution and abuse of process.

115.    This is the pattern and practice of Defendant Midland – to file suits with no basis and no intention of ever proving the case in an attempt to obtain default judgments against Alabama consumers or to obtain settlements from Alabama consumers who do not realize the bogus nature of the suit filed by Defendant Midland.

116.    The Plaintiff suffered past and future emotional distress and monetary loss as a direct and proximate result of Defendant Midland's abuse of process and malicious prosecution.

**WHEREFORE**, **PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against Defendants for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims more than $75,000.00), costs, expenses, fees, including attorney's fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

## PLAINTIFF HEREBY DEMANDS A TRIAL BY STRUCK JURY ON ALL MATTERS RAISED HEREIN

Respectfully submitted:

Jason L. Yearout (ASB-4487-T80J)
Attorney for Plaintiff
**YEAROUT & TRAYLOR, P.C.**
3300 Cahaba Road, Suite 300
Birmingham, Alabama 35223
t. 205.414.8169
f. 205.414.8199
e. jyearout@yearout.net

Robert S. Dooley (ASB-6194-R70D)
Attorney for Plaintiff
**Stone, Patton, Kierce & Freeman**
118 North 18th Street
Bessemer, Alabama 35020
t:      205.424.1150
e:      robert@stonepatton.com

## SERVE THE FOLLOWING BY CERTIFIED MAIL:

**Midland Funding, LLC**
c/o CSC Lawyers Incorporating SVC, Inc.
150 S. Perry Street
Montgomery, Alabama 36104

**TD Bank USA, NA**
One Portland Square
Portland, ME 04101

**Equifax Information Services, LLC**
c/o CSC Lawyers Incorporating SVC, Inc.
150 S. Perry Street
Montgomery, Alabama 36104

**Experian Information Solutions, Inc.**
c/o CT Corporation System
2 N. Jackson Street, Suite 605
Montgomery, Alabama 36104

**Trans Union, LLC**
c/o Prentice-Hall Corporation System, Inc.
150 S. Perry Street
Montgomery, Alabama 36104