FILED

2016 Jan-12  PM 04:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SHARON DOWNING,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:15-cv-00737-RDP** |
| | } | |
| **MIDLAND FUNDING, LLC, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

**<u>MEMORANDUM OPINION</u>**

**I.      Introduction**

This case is before the court on Defendant Midland Funding, LLC's Motion for More Definite Statement (Doc. # 43) and Motion to Stay Discovery and Suspend Scheduling Order (Doc. # 44), both filed December 3, 2015.  The Motions are both fully briefed.  (Docs. # 43, 49, 52; 44, 50, 53).

Plaintiff filed her Complaint on April 30, 2015.  (Doc. # 1).  Defendant Midland Funding, LLC ("Midland") timely filed an Answer to that Complaint.  (Doc. # 16).  After the court held a scheduling conference, Plaintiff filed her Amended Complaint.  (Doc. # 38).  The Amended Complaint added no new parties, but increased the number of counts (which alleged violations of the Federal Debt Collection Practices Act ("FDCPA")) and also made additional factual allegations.  (*Id.*).

Midland responded by filing the subject Motions (Docs. # 43, 44), which are opposed by Plaintiff.  (Docs. # 49, 50, 52, 53).  Midland argues that the Amended Complaint is a disfavored "shotgun pleading" making it impossible for Midland to formulate a meaningful response.

(Docs. # 42, 52).  Midland also requests a stay of discovery pending Plaintiff's filing of a new complaint and Midland's possible filing of  a motion to dismiss.  (Docs. # 44, 53).  Plaintiff has responded by asserting that Midland's Motions are disingenuous and that Midland can ascertain the allegations against it.  (Docs. # 49, 50).

After careful review, and for the reasons stated below, the court concludes that Midland's Motions (Docs. # 43, 44) are due to be denied.

## II.    Analysis

In its Motion for More Definite Statement, Midland moves, pursuant to Federal Rule of Civil Procedure 12(e), for a more definite statement in accordance with Federal Rules of Civil Procedure 8 and 10, and also asserts that Plaintiff's Amended Complaint (Doc. # 38) is a disfavored "shotgun pleading."  (Doc. # 43).  Midland also argues in its Motion To Stay Discovery And Suspend Scheduling Order that discovery should be stayed pending the outcome of the Motion For More Definite Statement and any subsequent motion to dismiss.  (Doc. # 44).

### A.    The Amended Complaint is not a disfavored "shotgun pleading"

Rule 12(e) provides in pertinent part that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  A Rule 12(e) motion is an appropriate response to a "shotgun pleading."  *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996).  A shotgun pleading tends to violate Federal Rules of Civil Procedure 8(a)(2)[1] and 10(b).[2]  *Weiland v. Palm Beach Cty. Sheriff's*

---

[1] A pleading "must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

[2] "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense."  Fed. R. Civ. P. 10(b).

*Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).  "The problem with shotgun pleadings 'is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'"  *Wright v. Watson*, No. 15-cv-34, 2015 WL 4873381, at \*3 (M.D. Ga. Aug. 13, 2015) (quoting *Weiland*, 792 F.3d at 1323).

Plaintiff's Amended Complaint is not a shotgun pleading, even if it bears some characteristics of one.  The Amended Complaint is akin to that reviewed by the court in *Wright* and adjudged to suffice under Rules 8(a)(2) and 10(b).  *See Wright*, 2015 WL 4873381.  First, as in *Wright*, the Amended Complaint contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before."[3] *Id.* at \*3 (quoting *Weiland*, 792 F.3d at 1321).  But, while it may have been preferable for Plaintiff not to have pleaded her claims in this fashion, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count."  *Weiland*, 792 F.3d at 1324.  Indeed, "[i]t is not difficult to understand what the Defendants 'were alleged to have done and why they were liable for doing it.'"  *Wright*, 2015 WL 4873381, at \*3 (quoting *Weiland*, 792 F.3d at 1324).

The Amended Complaint puts Midland on notice of the allegations against it—that is, eight counts "exclusively against Defendant Midland" alleging violations of the FDCPA (Counts I-VIII); one count against all Defendants for invasion of privacy arising in part from debt collection activities (Count IX); three counts "exclusively against Defendant Midland" regarding

---

[3] Unlike many shotgun pleadings, however, the Amended Complaint does not contain multiple counts where each one adopts the allegations of each preceding count, "causing each successive count to carry all that came before *and the last count to be a combination of the entire complaint*."  *Weiland*, 792 F.3d at 1322 (emphasis added); (*see* Doc. # 38).

the hiring, training and supervision of incompetent debt collectors (one for negligence, one for wantonness, and one for intentional) (Counts X-XII); one count against all Defendants for negligence and wantonness (Count XIII); one count "exclusively against Defendant Midland" for malicious prosecution (Count XIV); and one count against all Defendants for violations of the FCRA (Count XV).  (Doc. # 38).  These counts stand in contrast to the five causes of action alleged in the initial Complaint which alleged violations of the FCRA by all Defendants (Count One); invasion of privacy by all Defendants (Count Two); negligent, wanton, and/or intentional hiring and supervision of incompetent employees or agents by all Defendants (Count Three); negligence/wantonness by all Defendants (Count Four); and malicious prosecution and abuse of process by Midland only (Count Five).  (Doc. # 1).  Midland filed an Answer in response to the initial Complaint, even though that Complaint combined more types of causes of action into a single count (*e.g.*, Count Three) and did not as clearly specify which Defendant is liable for which cause of action as does the Amended Complaint.  (*Compare* Docs. # 1 *and* 38).  While not conclusive, the filing of the Answer to the initial Complaint tends to persuade the court that Defendant understood Plaintiff's allegations and therefore "did not [then] move for a more definite statement under [Rule] 12(e) or otherwise assert [any] difficulty knowing what [was] alleged . . . and why [it was] liable . . . ."  *Weiland*, 792 F.3d at 1324.  And now, if anything, the Amended Complaint better separates claims and clearly specifies which counts apply to Midland.[4]  (*See* Doc. # 38).  Thus, Midland has no sufficient basis to move for a more definite statement now.

Even so, it is true that the Amended Complaint does set forth a number of allegations such that it, at times, "is replete with conclusory, vague, and immaterial facts not obviously

_____

[4] The court notes that the Amended Complaint adds eight counts of violations under the FDCPA, which would require related factual allegations to prove.

4

connected to any particular cause of action." *Weiland*, 792 F.3d at 1322.  To be sure, Plaintiff makes reference to multiple unnamed other lawsuits by and against Midland, and asserts the findings of Congress in passing the Fair Debt Collections Practices Act.[5]  (Doc. # 38).  Also, the Amended Complaint repeats some paragraphs that appear to re-state some facts instead of reciting or alleging something new.  (*Id.*).  Granted, these instances are confusing and make the Amended Complaint more cluttered than it perhaps should be, and even may cause it to look like a classic shotgun pleading.

However, just as students are often warned against judging a book by its cover, the fate of a complaint is not to be determined by stylistic shortcomings.  To that end, while the Amended Complaint bears many of the hallmarks of a shotgun pleading, the Eleventh Circuit in *Weiland* suggests that district courts in our circuit should look to substance over form.  *See Weiland*, 792 F.3d at 1326 (holding that the court is "not retreating from this circuit's criticism of shotgun pleadings, but instead [is] deciding that, whatever [its] faults, [the complaint is] informative enough to permit a court to readily determine if they state a claim upon which relief can be granted").  The court in *Weiland* examined more than sixty published decision regarding shotgun pleadings and, "[i]n the hope [it] could impose some clarity," determined that "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Id.* at 1321, 1323.  Specifically, the Eleventh Circuit ruled that the district court abused its discretion in dismissing the plaintiff's third amended complaint on the grounds that it was a shotgun pleading that (1) incorporated all of the factual allegations contained in forty-nine paragraphs inclusive, and (2) failed to identify which

---

[5] The court presumes these references are made to support a case for punitive damages, which are requested in the Prayer For Relief.  (Doc. # 38).

allegations were relevant to the elements of which legal theories. *Id.* at 1324, 1326. Significant to the *Weiland* court was that "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underling each count." *Id.* at 1324.

As in *Weiland*, the Amended Complaint here "looks, at first glance, like the most common type of shotgun pleading. But it is not." *Weiland*, 792 F.3d at 1324. For one thing, "[t]he allegations of each count are not rolled into every successive count on down the line." *Id.* And, for another, "[t]he task of figuring out which of the [135] paragraphs that are incorporated into [the counts] are relevant to [each] claim . . . is hardly a task at all." *Id.* at 1324-25. Indeed, "[i]t is greatly simplified by the organization of the [135] paragraphs of factual allegations into [five] subsections" (in addition to the introduction and sections on jurisdiction, venue, and the parties).[6] *Id.* at 1325; (Doc. # 38).    Just as such factors weighed against finding a shotgun complaint in *Weiland*, they weigh against such a finding here.

Further, the stylistic inefficiencies of the Amended Complaint do not violate the requirement that the complaint be a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, and in any event, Plaintiff's failure to specify purportedly similar lawsuits by and against Midland does not cause the Amended Complaint to rise to the necessary level of vagueness or ambiguity required for a grant of the Motion For More Definite Statement. *See Erickson v. Hunter*, 932 F. Supp. 1380, 1385 (M.D. Fla. 1996). Moreover, "[d]iscovery is the correct vehicle to obtain information necessary for trial." *Id.* at 1384.

---

[6] Those subsections are labelled "Recognition By Congress of the Widespread Abuse by Collectors," "The Small Claims Court Complaint," "Midland Loses The collection Case," "Defendants Falsely Credit Reports on Plaintiff's Credit," and "Remaining Factual Allegations." (Doc. # 38).

At worst, some allegations are "over-inclusive" and "poorly drafted," but in this instance verbosity and poor draftsmanship do not inhibit the provision of adequate notice. *Weiland*, 792 F.3d at 1321, 1325.  To be sure, this court is able to establish the claims asserted against Midland.  And, if the Amended Complaint were a true shotgun pleading, it would be "difficult to understand what the Defendants 'were alleged to have done and why they were liable for doing it.'"  *Wright*, 2015 WL 4873381, at *3 (citation omitted).  But, Midland's Co-Defendant TD Bank USA did not appear to have any difficulty in understanding what it was alleged to have done and why—TD Bank filed an answer to the Amended Complaint.  (Doc. # 41); *cf. Weiland*, 792 F.3d at 1316 ("The complaint . . . does not approach th[e] ideal [pure statement free of surplusage matter], but it claims that the plaintiff has a case, and parts of it do a good enough job telling what that case is to require the defendants to say 'either that that is not so, or something else is so.'").  While it is Midland's Motion For More Definite Statement that is under consideration here (and not TD Bank's), the court determine that the Amended Complaint puts Defendants on adequate notice, and Midland can reasonably file an appropriate responsive pleading.

Accordingly, the court "concludes that the 'counts are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted.'"  *Wright*, 2015 WL 4873381, at *4 (quoting *Weiland*, 792 F.3d at 1326).  The court cannot say that "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief."  *Weiland*, 792 F.3d at 1325 (quoting *Anderson*, 77 F.3d at 366) (emphasis in original) (internal quotations omitted).  Thus, the court will not order a more definite pleading, and Midland's Motion For More Definite Statement (Doc. # 43) is due to be denied.

**B.      Discovery does not need to be stayed in this case**

Midland's Motion To Stay Discovery And Suspend Scheduling Order (Doc. # 44) is also due to be denied.  First, the court's denial of Midland's Motion For More Definite Statement leaves the stay request unsupported.  Second, Midland is on notice that Plaintiff alleges certain violations, including violations of the FDCPA.  Whether each individual cause of action may survive a later-filed dispositive motion, if any, is not a reason to halt discovery.

Additionally, Midland has previously answered Plaintiff's initial Complaint.  (Doc. # 16). That Complaint alleged similar violations of (1) the FCRA, (2) invasion of privacy, (3) negligent, wanton, and/or intentional hiring and supervision of incompetent employees or agents, (4) negligence/wantonness, and (5) malicious prosecution and abuse of process.  (*See* Docs. # 1, 16).  These same counts appear in the Amended Complaint (albeit separated into eight causes of action instead of five).  (Doc. # 38).  Further, the count for invasion of privacy (which included an express reference to the FDCPA) arose from Midland's (and other Defendant's) allegedly illegal debt collection actions.  (*See* Docs. # 1, 38; *see also* Doc. # 16).  The fact that Midland filed an Answer to those claims indicates that, as early as June 29, 2015 (the date the Answer to the initial Complaint was filed), Midland understood the claims asserted against it and was prepared to conduct discovery regarding those claims.

And, the discovery as to those causes of action would include quite similar (if not, in many instances, precisely the same) discovery as the causes of action newly alleged in the Amended Complaint.  (*Compare* Docs. # 1 *and* 38).  Therefore, because there is no danger of "extended and largely aimless discovery" that would drown this court "in an uncharted sea of

depositions, interrogatories, and affidavits," there is no reason to suspend discovery.[7] *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).

III.    **Conclusion**

For these reasons, Midland's Motions For More Definite Statement and To Stay Discovery And Suspend Scheduling Order (Docs. # 43, 44) are due to be denied. A separate order will be entered.

**DONE** and **ORDERED** this January 12, 2016.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[7] However, the parties Joint Motion For Extension of Deadlines (Doc. # 57) is due to be granted in a separate order, and the discovery deadlines (among others) will be extended.

Furthermore, the court's denial of the request for a blanket stay of discovery does not mean that the parties cannot agree to voluntarily halt discovery (at least on certain issues) pending the outcome of the pleading stage. For example, Midland may not be able to answer Interrogatory No. 1 (attached as "Exhibit A" to Midland's reply brief) until filing a responsive pleading asserting affirmative defenses. (*See* Doc. # 53-1). During the course of this litigation, counsel can and should be professional and courteous to each other, and that professionalism and courtesy must begin now.